UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMELL LEVERS (A-063-984-017),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-6572 TLN CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Ramell Levers (A-063-984-017), a native and citizen of Jamaica, who is proceeding with appointed counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and that petitioner be provided with a bond hearing.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Jamaica. (ECF No. 8 at 10.) Petitioner entered the United States on February 11, 2015 as a legal permanent resident. (Id. at 11.) On March 11, 2025, petitioner was convicted in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida of violating Florida Statute 893.13(6)(a) (possession of a controlled substance: cocaine), Florida

[1] Petitioner is proceeding in forma pauperis. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

Statute 784.07(2)(B) (battery on a law enforcement officer), Florida Statute 843.01 (resisting officer with violence) and Florida Statute 893.147(1) (possession of drug paraphernalia). (Id. at 19.) Petitioner was sentenced to 24 months imprisonment. (Id. at 23-24.) Petitioner was detained by immigration officials on November 19, 2025. (ECF No. 1 at 5.) Petitioner has not received a bond hearing since his detention. (Id.) Respondents did not submit a Notice to Appear. The Form I-213 states that the basis for petitioner's removal is Immigration and Nationality Act ("INA") section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), based on petitioner's conviction for violation of a law related to a controlled substance as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802. (ECF No. 8 at 12.) The Form I-213 refers to petitioner's March 11, 2025 conviction for violating Florida Statute 893.13(6)(a) (possession of a controlled substance: cocaine). (Id.)

On April 9, 2026, an immigration judge ordered petitioner removed to Jamaica. (Id. at 51-54.) Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"). (Id. at 56-58.) On June 19, 2026, the Department of Homeland Security ("DHS") filed in the BIA a motion to remand. (Id. at 60-63.) This motion states that DHS determined that petitioner is a member of the class certified in Franco-Gonzalez v. Holder, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ("Franco I"),[2] and entitled to certain procedural protections, because a qualified medical provider determined that petitioner has a diagnosis of schizophrenia and/or schizoaffective disorder. (Id. at 61-62.) DHS requested that the BIA remand the matter for limited purpose to allow the Immigration Court to conduct an inquiry regarding petitioner's mental competency to represent himself. (Id. at 62 (citing Franco-Gonzalez v. Holder, 2014 WL 5475097, at *10 (C.D. Cal. Oct. 29, 2014) ("Franco II") ("In the case of an unrepresented immigration detainee with an appeal pending before the Board who has not previously determined to be a Class member, when documentary, medical or other evidence indicating that such individual [meets the Class Membership Criteria] comes to the Board's attention, the Board shall order a remand to the Immigration Judge with instructions to apply the procedures set forth in Section III.B of this

[2] This case is titled Franco-Gonzalez v. Napolitano. See 2011 WL 11705815.

Order."). The status of petitioner's appeal and the motion to remand is not clear as the government's official Executive Office for Immigration Automated Case Information website states that information regarding petitioner's case is not available.[3] See https://acis.eoir.justice.gov/en.

## II. PROCEDURAL BACKGROUND

On August 18, 2026, petitioner filed his petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel. (ECF Nos. 1-3.) On August 19, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings. (ECF No. 5.) On August 27, 2026, respondents timely filed an answer to the petition. (ECF No. 8.) On September 11, 2026, petitioner filed an opposition/traverse to respondents' answer. (ECF No. 10.) On September 29, 2026, this Court granted petitioner's motion for appointment of counsel and counsel was appointed on September 30, 2026. (ECF Nos. 11, 12.) On October 22, 2026, petitioner, through counsel, filed a supplemental traverse. (ECF No. 14.) On October 30, 2026, respondents filed a reply to the supplemental traverse. (ECF No. 16.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing

[3] The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including undisputed information posted on official websites. Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). The Executive Office for Immigration Review ("EOIR") adjudicates immigration cases, and the EOIR Automated Case Information website is an official website of the United States Government. The address of this official website is https://acis.eoir.justice.gov/en/.

the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

The petition raises one claim: petitioner's prolonged detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.) Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). (ECF No. 8 at 2.) Respondents further argue that petitioner should be required to challenge whether he is subject to mandatory detention under 8 U.S.C. § 1226(c) before the immigration court in a Joseph hearing. See Matter of Joseph, 22 I & N Dec. 799 (BIA 1999). (Id. at 2-3.) Finally, respondents argue that petitioner's detention is constitutional. (Id. at 3-7.) The supplemental traverse contains briefing in support of petitioner's Fifth Amendment prolonged detention claim. (ECF No. 14 at 4-8, 13-15.) The supplemental traverse also argues that Matter of Joseph does not preclude the court's consideration of petitioner's habeas petition and Section 504 of the Rehabilitation Act precludes the exhaustion of administrative remedies. (Id. at 8-13.)

### A. Due Process Claim (Claim One)

In analyzing petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). For purposes of analyzing a prolonged detention claim, this Court assumes without deciding that petitioner is detained under 8 U.S.C. § 1226(c)(1)(B) because he is subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) for being convicted under Florida Statute 893.13(6)(a) for possession of a controlled substance (cocaine). Pursuant to 8 U.S.C. § 1226(c), "detention is mandatory, and a noncitizen of the United States…therefore is not statutorily entitled to a bond hearing." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023); see 8 U.S.C. § 1226(c)(1); Jennings v. Rodriguez, 583 U.S. 281, 303 (2018).

This does not end the inquiry, however, because petitioner has raised a due process claim. While the Supreme Court has rejected a facial challenge to mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), an as applied challenge is not foreclosed and Justice

Kennedy's concurring opinion in Demore specifically noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532. In addition, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)." Loba L.M. v. Andrews, et al., No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); see Avilez, 69 F.4th at 538 (declining to determine whether due process requires a bond hearing for noncitizens detained pursuant to § 1226(c)). "Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)].'" Loba L.M., 2025 WL 2939178, at *5 (quoting Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); citing Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable)). "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. 2:18-cv-1669 RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted); see also Loba L.M., 2025 WL 2939178, at *5. This Court joins other courts that have found that unreasonably prolonged detention pursuant to § 1226(c) without a bond hearing can violate due process. See Keo v. Chestnut, No. 1:26-cv-1192 DJC CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026); Loba L.M., 2025 WL 2939178, at *5.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 818 F. Supp. 3d 1141, 1151 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 693).

The court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Court concludes that petitioner has a protected liberty interest in his freedom from detention. See Keo, 2026 WL 747117, at *2 (concluding clear liberty interest in freedom from detention where petitioner was detained pursuant to § 1226(c) for over 37 months). Petitioner has been detained for almost one year and faces prolonged detention during his appeal to the BIA and further potential judicial review. This also exceeds the time period the Supreme Court noted in Demore: "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530.

Next, the court turns to what procedures are necessary to ensure that the deprivation of the protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim

challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.[4] Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). The length of future detention is unknown and prolonged where petitioner's appeal to the BIA appears to be pending, including the request for remand, petitioner does not yet have a final removal order and further judicial review is available after the BIA appeal. (See ECF No. 8 at 56-58, 60-63.) In addition, the record before the Court does not indicate whether there have been any delays caused by either the petitioner or the government. The first factor therefore weighs in petitioner's favor.

Second, "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v.

---

[4] "District courts within this Circuit have adopted a variety of multi-factor tests for determining at what point a noncitizen detained pursuant to a mandatory detention statute is constitutionally entitled to a bond hearing." Mohammed v. Warden of California City Detention Center, No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3 (E.D. Cal. Jan. 26, 2026) (applying Mathews test to prolonged detention claim under § 1225(b)(1)). Cf. Keo, 2026 WL 747117, at *2 (applying seven factor test from Martinez, 2019 WL 5968089, at *7, to prolonged detention claim under § 1226(c)). As the considerations in the various multi-factor tests are relevant to the due process analysis, the Court will address them within the Mathews framework.

ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since November 19, 2025, without a bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger given his underlying conviction that makes him removable.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Overall, balancing these factors, the Court finds that petitioner is entitled to a bond hearing under the Due Process Clause where he has been detained for almost one year, his BIA appeal and the motion for remand appear to remain pending, and the length of his future detention is unknown where further judicial review is available and the removal order is not yet final. See also Jose G. M. L. v. Warden of the Golden State Annex Detention Facility, et al., No. 1:26-cv-0047 TLN EFB, 2026 WL 472987, at *5 (E.D. Cal. Feb. 19, 2026) (granting preliminary injunctive relief for a bond hearing where the petitioner's detention under § 1226(c) exceeded six months).

**B. Remaining Arguments**

Respondents contend that petitioner has not exhausted administrative remedies by failing to request a Joseph hearing. (ECF No. 8 at 2-3.) Petitioner addresses this argument in the supplemental traverse. (ECF No. 14 at 8-13.) However, petitioner does not appear to challenge that he is subject to detention under 8 U.S.C. § 1226(c). (ECF No. 1, ECF No. 14.) For this reason, this Court will not address the arguments raised regarding administrative exhaustion.

**C. Bond Hearing**

On November 21, 2011, the Central District of California district court certified a class and two subclasses:

> [Class:] All individuals who are or will be in DHS custody for

> removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings.
>
> Sub–Class 1: Individuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings.
>
> Sub–Class 2: Individuals in the above-named Plaintiff Class who have been detained for more than six months.

Franco I, 2011 WL 11705815, at *16. The court ordered that members of Sub-Class Two detained for more than 180 days be provided with bond hearings where the government bears the burden of justifying continued detention by clear and convincing evidence. See Franco-Gonzalez v. Holder, 2013 WL 8115423, at *1 (C.D. Cal. Apr. 13, 2013) (Franco III). Additionally, "members of Sub-Class Two who are also members of Sub-Class One shall be provided a Qualified Representative to represent them during such bond hearing." Id. "In all cases, at least seven days prior to any bond hearing, [respondents] shall provide these sub-class members and/or their Qualified Representatives with adequate notice of a bond hearing…" Id.

The record above suggests that petitioner is a member of both Sub-Class One and Sub-Class Two of the Franco-Gonzalez class, given that petitioner has been detained for longer than six months and his mental health diagnosis discussed in the motion for remand. (See ECF No. 8 at 61-62.) For this reason, this Court recommends that petitioner receive a bond hearing where the government bears the burden to prove by clear and convincing evidence that petitioner is a flight risk or danger, and also that petitioner be provided a qualified representative under Franco-Gonzalez at this bond hearing unless the immigration judge has held a judicial competency inquiry and determined that petitioner is competent. See Surawat K. v. Chestnut, No. 1:26-cv-4591 TLN JDP, 2026 WL 2654641 (E.D. Cal. Sept. 9, 2026) (ordering bond hearing for petitioner identified as member of Franco-Gonzalez class, where government bears the burden to demonstrate that petitioner's detention is justified, and that petitioner be appointed a qualified representative under Franco-Gonzalez unless an immigration judge held a competency hearing

and found petitioner competent).

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondents be ordered to provide petitioner Ramell Levers (A-063-984-017) with a constitutionally adequate bond hearing before an immigration judge within **fourteen (14) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention. Respondents must provide petitioner, and if petitioner has a qualified representative and/or counsel, also petitioner's qualified representative and counsel, with at least **seven (7) days'** notice before the bond hearing. At the bond hearing, petitioner shall be provided with a qualified representative under Franco-Gonzalez unless an immigration judge has held a judicial competency inquiry and determined that petitioner is competent to represent himself.
3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 5, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Leve6572.157.imm.BOND/2